**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Eli Vershleiser,<br><br>                Plaintiff,<br><br>    -against-<br><br>Equifax Information Services, LLC,<br>Experian Information Solutions, Inc.,<br>American Express National Bank, and<br>Nationwide Credit & Collection, Inc.,<br><br>                Defendant(s). | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Eli Vershleiser, by and through counsel, as for this Complaint against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), (Equifax and Experian, each a "Bureau" and collectively "Bureaus"), American Express National Bank ("Amex" or "Furnisher") (Bureaus and Amex collectively "FCRA Defendants"), and Nationwide Credit & Collection, Inc. ("NCI" or "Debt Collector") respectfully sets forth, complains, and alleges, upon information and belief, the following:

1.      Plaintiff brings this action for damages arising from Equifax, Experian, and Amex's violations of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act ("FCRA").

2.      Plaintiff brings this action for damages arising from NCI's violations of 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collections Practices Act ("FDCPA").

**JURISDICTION AND VENUE**

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p *et seq.*

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here, the Plaintiff resides here, and the Defendants transact business here.

## PARTIES

5. Plaintiff is a resident of the State of New York, County of Kings.

6. At all times material hereto, Plaintiff was a "consumer" as defined under 15 U.S.C. § 1681a (c).

7. Defendant Equifax Information Services, LLC is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

8. Equifax is a Georgia corporation registered to do business in this State.

9. Equifax may be served with process c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

10. Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

11. At all times material hereto, Equifax disbursed such consumer reports to third parties under a contract for monetary compensation.

12. Defendant Experian Information Solutions, Inc., is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

13. Experian is a Delaware corporation registered to do business in this State.

14.     Experian may be served with process c/o CT Corporation System, 28 Liberty Street, New York, NY 10005.

15.     Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

16.     At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

17.     Experian was sued by the Consumer Financial Protection Bureau ("CFPB") on January 7, 2025.

18.     The CFPB sued Experian for sham investigations of credit report errors. https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-experian-for-sham-investigations-of-credit-report-errors/.

19.     Experian does not properly investigate disputes and fails to remove or reinserts errors on reports, threatening consumers' access to credit, employment, and housing. *Id.*

20.     Experian routinely and uncritically accepts the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face, or when Experian has other information available that suggests the furnisher is unreliable. *Id.*

21.     Experian's failures are an abdication of its obligations under the FCRA. *Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.*, 8:25-cv-00024 (Central Dist. Cal.) Doc. 1 at ¶ 14.

22.     Defendant Amex is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

23.     Amex may be served with process c/o C T Corporation System, 28 Liberty Street, New York, NY 10005.

24.     Defendant NCI is a "debt collector" as the phrase is defined in 15 U.S.C. § 1692(a)(6) and used in the FDCPA.

25.     NCI has a service address at 815 Commerce Dr. Suite 270 Oak Brook, IL 60523.

26.     Upon information and belief, Defendant NCI is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another.

## FACTUAL ALLEGATIONS

27.     Plaintiff incorporates the above allegations as if set forth here.

28.     There is an Amex account in Plaintiff's name, account number ending in …7483 ("Account").

29.     In December 2021, Plaintiff was not delinquent on the Account.

30.     However, on or around December 2021, Amex made an offer to Plaintiff that it would accept $10,253.33 to settle his Account ("First Settlement Letter").

31.     Plaintiff agreed to pay a settlement amount of $10,253.33 allegedly due to Defendant Amex.

32.     Plaintiff sent a check for the full settlement payment in the settlement amount agreed upon for the balance on the Account.

33.     However, Defendant Amex returned the check stating it was "damaged."

34.     In January 2022 Plaintiff was not delinquent on the Account.

35.     However, on or around January 2022, Defendant Amex offered Plaintiff to accept $10,253.33 ("Settlement Amount") to settle his Account ("Settlement Letter").

36.     Plaintiff sent a check for the full settlement payment in the settlement amount agreed upon for the balance on the Account.

37.     Amex accepted the check and deposited the funds.

38.     However, Amex then pulled a bait and switch on Plaintiff and failed to abide by the terms of the settlement.

39.     Amex defrauded Plaintiff into paying the Settlement Amount without Amex keeping its side of the bargain.

40.     Despite Plaintiff timely paying the full Settlement Amount, Amex reported the Account as having a balance.

41.     The balance being reported on Plaintiff's credit report for the Account reflects the difference between the full balance and the settlement.

42.     This is false as there is no remining balance on the Account pursuant to the terms of the Settlement Letter and the agreement between Plaintiff and Amex.

<u>FCRA Violations</u>

43.     The Account was appearing on Plaintiff's credit reports.

44.     The Settlement Amount was paid by Plaintiff.

45.     Despite that the full Settlement Payment was made, the Account has been showing derogatory information from July 2022 until present.

46.     The Account should not be showing any late payments.

47.     The Account nonetheless is being reported as past due.

48.     The Account nonetheless is being reported as charged off.

49.     This is despite that Plaintiff timely paid the Settlement Amount pursuant to the Settlement Letter.

50.     However, the Account was still being reported by each FCRA Defendant with derogatory information.

51.     Amex furnished incorrect credit formation about the Account to each Bureau despite Plaintiff timely making the Payment.

52.     The Account is appearing on Plaintiff's credit reports with derogatory information.

53.     Amex continued to report the derogatory information to each Bureau.

54.     Each Bureau has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

55.     On or about January 5, 2026, Plaintiff notified each Bureau that he disputed the accuracy of the information it was reporting ("Dispute").

56.     Plaintiff also sent his Dispute to non-party Trans Union.

57.     Plaintiff stated in his Dispute that he had timely paid the Settlement Amount pursuant to the Settlement Letter.

58.     Plaintiff stated that he had paid the Account balance.

59.     Plaintiff included his name, address, social security number, Account information, phone number, and email address with his Dispute.

60.     Unlike each Defendant, upon receipt of Plaintiff's Dispute Trans Union corrected the inaccurate information.

61.     Each Bureau is required to notify Furnisher of Plaintiff's dispute.

62.     It appears and is therefore averred that each Bureau and Trans Union notified Furnisher of Plaintiff's dispute.

63.     Upon receipt of the dispute of the account by Plaintiff, each Bureau failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed account.

64.     Upon receipt of the dispute of the account by the Plaintiff from each Bureau and Trans Union, Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed account.

65.     Had Furnisher conducted a reasonable investigation it would have been revealed to Furnisher that the account is inaccurate.

66.     A reasonable investigation by each Bureau would have revealed that the account was not being reported correctly as it should not have been reported at all.

67.     A reasonable investigation by each FCRA Defendant would have revealed that the Account is being incorrectly reported.

68.     Despite the dispute by the Plaintiff that the information on his consumer report was inaccurate with respect to the disputed account, each FCRA Defendant did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

69.     Each Bureau violated 15 U.S.C. § 1681i (a) by failing to conduct a reasonable investigation and failing to delete or correct the disputed trade line within 30 days of receiving Plaintiff's Dispute.

70.     Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i

(a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

71. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

72. Furnisher's actions described herein violated 15 U.S.C. 1681s-2 (b).

73. Notwithstanding Plaintiff's efforts, each FCRA Defendant continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

74. Furnisher continued to furnish credit data which is inaccurate and materially misleading, and each Bureau's reporting of the above-referenced tradeline continued to be inaccurate and materially misleading.

75. Each Bureau did not follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

76. Each FCRA Defendant knew or had reason to know the information was inaccurate.

77. Each FCRA Defendant was in possession of the documentation of the inaccuracies of the Account provided by Plaintiff yet persisted in reporting it anyway.

78. Upon information and belief, each Bureau did not even request documentation from Furnisher during its investigation(s) of Plaintiff's Dispute(s).

79. Upon information and belief, Furnisher did not send any documentation to each Bureau during its investigations of Plaintiff's Dispute.

80. Each FCRA Defendant failed to contact Plaintiff during their investigation of Plaintiff's Dispute.

81.     Upon information and belief, each Bureau failed to specifically ask Amex for a copy of the Settlement Letter.

82.     Upon information and belief, each Bureau failed to specifically ask Amex if they sent the Settlement Letter.

83.     Upon information and belief, each Bureau failed to specifically ask Amex if Plaintiff made the Settlement Payment.

84.     Upon information and belief, each Bureau failed to specifically ask Amex for a copy of the Settlement Payment.

85.     On information and belief, on a date better known to each Bureau, it prepared and issued credit reports concerning the Plaintiff that included inaccurate and materially misleading information relating to the Account.

86.     The information furnished by Furnisher and published by each Bureau improperly, falsely, and inaccurately characterizes Plaintiff's account information.

87.     Each Bureau reported this improper and inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they disseminated to various persons and credit grantors, both known and unknown.

88.     Had each Bureau enacted and followed reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report, the negative account information would not have appeared on Plaintiff's credit report.

89.     Furnisher continued to furnish credit data which is inaccurate and materially misleading, and each Bureau's reporting of the above-referenced tradeline continued to be inaccurate and materially misleading.

90.     When Plaintiff first brought this issue to Amex's attention in early 2022, Amex completely ignored the real issue and issued a nonsensical response.

91.     Amex stated:

> We have completed our research, which revealed that check payment of $10,253.33. which appear [sic] on your February 2022 statement is correctly credited for the legal amount written on the check.
>
> According to the law, the legal amount on a check is the amount written in script (for example, fourteen dollars and 32 cents), not the courtesy amount which is written in numbers. The legal amount is usually on the center line of the check. The courtesy amount is on the upper right side of a check and appears as a dollar and cents figure, for example, $14.32.
>
> In your case, both legal and courtesy amounts are same which is $10,253.33.

92.     This response had nothing to do with Plaintiff's dispute content.

93.     Amex continued its obfuscation of the facts trying to skirt its obligations.

### FDCPA Violations

94.     The Amex obligation arose out of a transaction in which money, property, insurance or services of the subject transactions were incurred for personal, family, or household purposes.

95.     The alleged Amex obligation is a "debt" as defined by 15 U.S.C.§ 1692a (5).

96.     Amex is a "creditor" as defined by 15 U.S.C.§ 1692a (4).

97.     Debt Collector is a "debt collector" as defined by 15 U.S.C.§ 1692a (6).

98.     Debt Collector is a "person" who uses instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of any debts.

99.     Debt Collector regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

100. Upon information and belief, Amex referred this Account to Debt Collector for collection.

101. Debt Collector collects and attempts to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone and internet.

102. Debt Collector contacted Plaintiff attempting to collect the fraudulent Amex debt.

103. Debt Collector's collection of the Account was improper as it was not owed.

104. Debt Collector's actions constitute improper debt collection.

Damages

105. As a result of each FCRA Defendant's failure to comply with the FCRA, Plaintiff was damaged.

106. Each FCRA Defendant's erroneous reporting continued to affect Plaintiff's reputation, creditworthiness, and credit score.

107. Plaintiff suffered damage to his reputation as it falsely appears as if he was delinquent on the Account.

108. This false information was published to numerous third parties.

109. This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's lawful financial affairs.

110. Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify each Defendant's willful and negligent actions, loss of credit, loss of ability to purchase and benefit from credit, reputational harm, decreased credit score, a chilling effect on applications for credit, difficulty with sleep, and the mental and emotional pain, anguish,

humiliation, and embarrassment of credit denial and having others see the false credit information.

111.    Plaintiff was also unable to partake in funding opportunities due to each FCRA Defendant's actions.

112.    Plaintiff was emotionally distraught.

113.    Plaintiff had trouble with sleep.

114.    Plaintiff expended time and money in determining the proper course of action.

115.    After disputing the Account, Plaintiff was attempting to secure credit.

116.    Due in whole or in part to each FCRA Defendant's actions, this false or misleading derogatory Account information was published to others, including but not limited to Capital One.

117.    Plaintiff runs a multimillion-dollar business. https://en.wikipedia.org/wiki/Eli_Verschleiser.

118.    Plaintiff has participated in $10+ billion of real estate transactions. *Id.*

119.    Defendants' actions described above have negatively impacted Plaintiff's ability conduct financial transactions and obtain much-needed credit.

120.    Plaintiff actively sought additional credit but was prevented from doing so due to each FCRA Defendants' actions described above.

## FIRST CAUSE OF ACTION
### (Violations of the FCRA as to each Bureau)

121.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

122.    This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

123.    Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained or furnished concerning the Plaintiff.

124.    Each Bureau violated 15 U.S.C. § 1681i (a) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's Dispute and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

125.    Upon information and belief, each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to each Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

126.    Each Bureau has willfully and recklessly failed to comply with the Act.

127.    In the alternative, each Bureau has negligently failed to comply with the Act.

128.    The failure of each Bureau to comply with the Act includes but is not necessarily limited to the following:

a.  The failure to enact and follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b.  The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c.  The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

d.  The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff, which was demonstrated with documentation that the information was inaccurate;

e.  The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

f.  The failure to take adequate steps to verify information each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

g.  The failure to provide notice of a dispute to the furnisher or, alternatively, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

129.  As a result of the conduct, action, and inaction of each Bureau, Plaintiff suffered damage as described above.

130.  The conduct, action and inaction of each Bureau was willful and/or negligent rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. §§ 1681n-1681o.

131.  Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

132.  WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## SECOND CAUSE OF ACTION
### (Violation of the FCRA as to Furnisher)

133.  Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

134.    This is an action for will and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

135.    Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

136.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

137.    The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

138.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

139.    Furnisher violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the dispute of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

140.    As a result of the conduct, action, and inaction of Furnisher, Plaintiff suffered damage as described above.

141.    The conduct, action, and inaction of Furnisher was willful and/or negligent, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. §§ 1681n-1681o.

142.    Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

143.    WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n-1681o.

### THIRD CAUSE OF ACTION
**(Violation of the FDCPA as to Debt Collector)**

144.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

145.    Debt Collector's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. §§ 1692d, 1692e, and 1692f.

146.    Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

147.    Debt Collector violated said section, as described above, in violation of §§ 1692e, 1692e (2), 1692e (5), 1692e (7), 1692e (8), and 1692e (10).

148.    Alternatively, Debt Collector's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. §§ 1692f, 1692f (1).

149.    Pursuant to 15 U.S.C. §1692f, a debt collector may not use any unfair or unconscionable means in connection with the collection of any debt.

150.    Debt Collector violated this section by unfairly attempting to collect the Account as described above.

151.     Pursuant to 15 U.S.C. § 1692d a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

152.     Debt Collector violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

153.     Debt Collector violated said section, as described above, in violation of § 1692d.

154.     By reason thereof, Debt Collector is liable to Plaintiff for judgment that Debt Collector's conduct violated Sections 1692d, 1692e, and/or 1692f et seq. of the FDCPA and Plaintiff is entitled to actual damages, statutory damages, costs and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

155.     Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each FCRA Defendant:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b) For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

c) For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

d) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), and 15 U.S.C. § 1681o (a)(2);

e) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

**WHEREFORE**, Plaintiff demands judgment against Debt Collector as follows:

a)  For actual damages provided and pursuant to 15 U.S.C. § 1692k(a)(1);

b)  For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)  For attorney fees and costs provided and pursuant to 15 U.S.C. § 1692k(a)(3);

d)  For declaratory relief stating that Defendant violated the FDCPA pursuant to 28 U.S.C. § 2201; and

e)  For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  March 31, 2026

Respectfully submitted,

**STEIN SAKS, PLLC**

s/ Eliyahu Babad
By: Eliyahu Babad, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x 121
EBabad@SteinSaksLegal.com
*Attorneys for Plaintiff*